IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

RECEIVED
USDC CLERK, GREENVILLE, SC

2006 MAY 23 P 2: 40

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 06-360 |
| EXXON MOBIL CORPORATION, ET. AL., | |
| Defendants. | |

**CONSENT DECREE**

TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II. JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
III. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
IV. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
V. GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . 7
VII. REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . . . . . . . . . . . . 12
IX. ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
X. REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . 18
XII. PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
XIII. ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
XIV. CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
XV. EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
XVI. PAYMENTS FOR RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
XVII. INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
XVIII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
XIX. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
XX. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
XXI. COVENANTS BY PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
XXII. COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES . . . 37
XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . . . . . . . 39
XXIV. ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
XXV. RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
XXVI. NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
XXVII. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XXVIII. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XXIX. APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XXX. COMMUNITY RELATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XXXI. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . . . 44
XXXIII. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
XXXIV. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

## I. BACKGROUND

A.    The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.    The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Aqua-Tech Environmental, Inc. (Groce Labs) Superfund Site ("Site") in Greer, South Carolina, together with accrued interest; and (2) performance of studies and response work by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.    In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the U.S. Fish and Wildlife Service, of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

D.    The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment. The Settling Federal Agencies do not admit any liability arising out of the transactions or occurrences alleged in any counterclaim asserted by the Settling Defendants.

E.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on December 16, 1994.

F.    In response to a release or a substantial threat of a release of hazardous substances at or from the Site, the Settling Defendants at the Site commenced on September 26, 1995, a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

G.    The Settling Defendants ultimately completed a Remedial Investigation ("RI") Report in April 2003, and the Settling Defendants completed a Feasibility Study ("FS") Report in July 2003.

H.    Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on July 27, 2003, and August 3, 2003, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

I.    The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 30, 2003. The ROD includes EPA's explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

J.    Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

K.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

L.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their heirs, successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.    Settling Defendants shall provide a copy of this Consent Decree to each contractor with a contract exceeding $200,000.00 hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are

used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 107.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 88 of Section XXI. Future Response Costs shall also include all Interim Response Costs that Defendants have agreed to reimburse under this Consent Decree, and all Interest on those Past Response Costs Settling Defendants have agreed to reimburse under this Consent Decree, and all Interest on those Interim Response Costs Settling Defendants have agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from September 27, 2004 to the date of entry of this Consent Decree.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site from September 27, 2004 through the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Municipal sewage sludge" shall mean any solid, semi-solid, or liquid residue removed during the treatment of municipal waste water or domestic sewage, and may include residue removed, all or in part, during the treatment of wastewater from manufacturing or processing

operations, provided that such residue has essentially the same characteristics as residue removed during the treatment of domestic sewage.

"Municipal solid waste" shall mean household waste and solid waste collected from non-residential sources that is essentially the same as household waste. While the composition of such wastes may vary considerably, municipal solid waste generally is composed of large volumes of non-hazardous substances (e.g., yard waste, food waste, glass, and aluminum) and can contain small amounts of other wastes as typically may be accepted in RCRA Subtitle D landfills.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the Statement of Work (SOW).

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs that the United States paid at or in connection with the Site through September 27, 2004, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in Sections H and L of the ROD and Section III of the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 30, 2003, by the Regional Administrator, EPA Region 4, or his delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Defendants to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 12 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean those Parties identified in Appendix D.

"Settling Defendants' Future Response Costs" means the necessary costs of response within the meaning of section 107(a)(4)(B) of CERLCA, 42 U.S.C. § 9607 (a)(4)(B), and consistent with the ROD and the National Contingency Plan, required to be incurred by the Settling Defendants as part of this Consent Decree and which began on January 1, 2005.

"Settling Federal Agencies" shall mean those departments, agencies, and instrumentalities of the United States identified in Appendix F, which are resolving any claims which have been or could be asserted against them with regard to this Site as provided in this Consent Decree. Settling Federal Agencies include "Remaining Settling Federal Agencies" and the United States Postal Service.

"Site" shall mean the Aqua-Tech Environmental (Groce Labs) Superfund Site, encompassing approximately 61 acres, located at 340 Robinson Road, Greer, Spartanburg County, South Carolina, and depicted generally on the map attached as Appendix C.

"State" shall mean the State of South Carolina.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Remaining Settling Federal Agencies" shall mean all Settling Federal Agencies identified in Appendix F except for the United States Postal Service.

"United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities, which includes without limitation EPA, the Settling Federal Agencies and any federal natural resources trustee.

"United States Postal Service" or "USPS" shall mean the United States Postal Service, as identified in Appendix F, and shall be included in the definition of Settling Federal Agencies.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous material" under 44-56-310(B) of the Code of Laws of the State of South Carolina.

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5.      Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health, welfare and/or the environment at the Site by the design and implementation of response actions at the Site by the Settling Defendants, to reimburse response costs of the Plaintiffs, and to resolve the claims of Plaintiffs against Settling Defendants as provided in this Consent Decree, and to resolve the claims of Settling Defendants which have been or could have been asserted against the United States with regard to this Site.

6.      Commitments by Settling Defendants and Settling Federal Agencies.

a.      Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree.  Settling Defendants shall also reimburse the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.  The Settling Federal Agencies shall reimburse the EPA Hazardous Substance Superfund for Past Response Costs, and shall reimburse the Settling Defendants for the Settling Federal Agencies' allocated share of both the Settling Defendants' and EPA's Future Response Costs, as provided in this Consent Decree.

b.      The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States under this Consent Decree are joint and several.  In the event of the insolvency or other failure of any one or more Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

7.      Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.      Permits.

a.      As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.      The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

a.       All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA. The Settling Defendants' contractor for the Remedial Investigation/Feasibility Study, Conestoga-Rovers & Associates, has been approved by EPA as the Supervising Contractor for the Settling Defendants. With respect to any contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.       If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.       If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

11.     Remedial Design.

a.       Within 90 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 10, Settling Defendants shall submit to EPA a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan"). The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in

7

accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree and/or the SOW. Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and become enforceable under this Consent Decree. Within 90 days after EPA's issuance of an authorization to proceed, the Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.      EPA may waive any interim reports required by the Consent Decree if Settling Defendants request this by letter and EPA approves in writing. In such case, it will not be necessary to modify the Consent Decree. Settling Defendants may also propose and EPA may agree to consolidate some of the deliverables required by this Section. Documents and plans previously approved by EPA for the RI/FS shall also be approved for use in performing work related to this Consent Decree, if consistent with the activities being conducted under the Consent Decree.

c.      The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of:  (1) design sampling and analysis plan (including, but not limited to, a Remedial Design Quality Assurance Project Plan (RD QAPP) in accordance with Section VIII (Quality Assurance, Sampling and Data Analysis)); and (2) a Construction Quality Assurance Plan; and may also include  (1) a treatability study; (2) a Pre-design Work Plan; (3) a preliminary design submittal; (4) an intermediate design submittal; and (5) a pre-final/final design submittal. In addition, the Remedial Design Work Plan shall include a schedule for completion of the Remedial Action Work Plan.

d.      Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submittal of the Health and Safety Plan for all field activities to EPA and the State, Settling Defendants shall implement the Remedial Design Work Plan. The Settling Defendants shall submit to EPA and the State all plans, submittals and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

e.      The preliminary design submittal shall include, at a minimum, the following: (1) design criteria; (2) results of treatability studies; (3) results of additional field sampling and pre-design work; (4) project delivery strategy; (5) preliminary plans, drawings and sketches; (6) required specifications in outline form; and (7) preliminary construction schedule.

f.      The intermediate design submittal, if required by EPA or if independently submitted by the Settling Defendants, shall be a continuation and expansion of the preliminary design. Any value engineering proposals must be identified and evaluated during this review.

g.      The pre-final/final design submittal shall include, at a minimum, the following:  (1) final plans and specifications; (2) Operation and Maintenance Plan; (3) Construction Quality Assurance Project Plan ("CQAPP"); (4) Field Sampling Plan (directed at measuring progress towards meeting Performance Standards); and (5) Contingency Plan. The

CQAPP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

12.    Remedial Action.

a.    Within 45 days after the approval of the final design submittal, Settling Defendants shall submit to EPA a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time as they submit the Remedial Action Work Plan, Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field activities required by the Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.    The Remedial Action Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including but not limited to, plans and schedules of completion of the work described in the ROD dated September 30, 2003. More specifically the Remedial Action Workplan shall include the following: (1) schedule for completion of the Remedial Action; (2) method for selection of the contractor; (3) schedule for developing and submitting other required Remedial Action plans; (4) groundwater monitoring plan; (5) methods for satisfying permitting requirements; (6) methodology for implementation of the Operation and Maintenance Plan; (7) methodology for implementation of the Contingency Plan; (8) tentative formulation of the Remedial Action team; (9) construction quality control plan (by constructor); and (10) procedures and plans for the decontamination of equipment and the disposal of contaminated materials. The Remedial Action Work Plan also shall include the methodology for implementation of the Construction Quality Assurance Plan and a schedule for implementation of all Remedial Action tasks identified in the final design submittal and shall identify the initial formulation of the Settling Defendants' Remedial Action Project Team (including, but not limited to, the Supervising Contractor).

c.    Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Defendants shall implement the activities required under the Remedial Action Work Plan. The Settling Defendants shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

13.    The Settling Defendants shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and Settling Defendants can demonstrate that any component of the Remedial Action and O&M is no longer necessary to be implemented.

14.    Modification of the SOW or Related Work Plans.

a.    Before modifying the work specified in the SOW EPA shall consult with the Settling Defendants on the need for modification unless the modification is deemed necessary by EPA under paragraphs 52-53 of the Consent Decree. If, after consultation with Settling Defendants, if EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

b.    For the purposes of this Paragraph 14 and Paragraph 50 only, the "scope of the remedy selected in the ROD" is: the work necessary for the effective implementation of the Aqua-Tech Environmental, Inc. Superfund Site selected remedy as set forth in the Aqua-Tech Environmental, Inc. (Groce Labs) Superfund Site ROD, the implementation of institutional controls as provided in the ROD, and the work necessary for the effective operation and maintenance of the remedy and monitoring of the groundwater and soil contamination at the Aqua-Tech Environmental, Inc. Superfund Site. Specifically, the remedy includes: (1) site capping using a combination of a RCRA Subtitle C Cover and RCRA Subtitle D soil cover for different portions of the municipal landfill to ensure all municipal waste is isolated from exposure and provide an extra level of protection in areas where the greatest concentrations of VOCs were reported; (2) in situ soil treatment in the former Process Distillation Area to reduce the mass of VOCs in shallow soils throughout this area; (3) in situ groundwater treatment by chemical injection (may require a multi-phase approach) to immediately reduce the contaminant mass and enhance the long term biodegradation of residual VOCs in groundwater. (Once in situ treatment is complete, final remediation of groundwater may be achieved through natural attenuation); (4) routine groundwater monitoring and Site inspections to assess the effectiveness and integrity of the selected remedial alternative; and, (5) institutional controls to restrict use and development of the Site to minimize public exposure to residual contaminants, and to ensure the long-term integrity of the remedy. The "scope of the remedy selected in the ROD" shall include any necessary and appropriate adjustments, measures or actions to ensure the effectiveness of the remedy.

c.    If the Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 65. The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.    Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

15.    Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or

representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

16.     a.     Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)     The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)     The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Paragraph 16.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.     Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

VII. REMEDY REVIEW

17.     Periodic Review. Settling Defendants shall conduct any studies and investigations as requested by EPA in support of EPA's requirements under § 121(c) of CERCLA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

18.     EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

19.     Opportunity To Comment. Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period. Settling Defendants shall be entitled to submit comments to demonstrate that the Performance Standards set forth in the ROD have been met and that further response actions are not necessary or must be required under a separate proceeding pursuant to CERCLA.

20.    Settling Defendants' Obligation To Perform Further Response Actions. If EPA selects further response actions for the Site that are outside the scope of the remedy selected in the ROD, but are necessary to meet the Performance Standards, the Settling Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraph 85 or Paragraph 86 (United States reservations of liability based on unknown conditions or new information) are satisfied. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the Reopener conditions of Paragraph 85 or Paragraph 86 of Section XXI (Covenants by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 68 (Record Review).

21.    Submissions of Plans. If Settling Defendants are required to perform the further response actions pursuant to Paragraph 20, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

22.    Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree. Settling Defendants shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP- approved methods. Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program.

Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

23.    Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA or their authorized representatives. Settling Defendants shall notify EPA not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Settling Defendants to take split or duplicate samples of any samples it takes as part of the Plaintiff's oversight of the Settling Defendants' implementation of the Work.

24.    Settling Defendants shall submit to EPA 4 copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

25.    Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

IX. ACCESS AND INSTITUTIONAL CONTROLS

26.    If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a.    commencing on the date of lodging of this Consent Decree, provide the United States, and its representatives, including EPA and its contractors, and the State with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)    Monitoring the Work;

(2)    Verifying any data or information submitted to the United States;

(3)    Conducting investigations relating to contamination at or near the Site;

(4)    Obtaining samples;

(5)    Assessing the need for, planning, or implementing additional response action at or near the Site;

13

(6)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)    Implementing the Work pursuant to the conditions set forth in Paragraph 6 of this Consent Decree;

(8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)    Assessing Settling Defendants' compliance with this Consent Decree; and

(10)   Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.    commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree, to minimize public exposure to residual contaminants. Such protective measures include but are not limited to the Site's designation within the "Airport Environs Area" as defined by the Greenville-Spartanburg Airport Environs Area zoning Ordinance, dated March 29, 1996; and future deed restrictions.

c.    if EPA so requests, execute and record in the Recorder's Office of Spartanburg County, State of South Carolina, an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 26.b of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such Settling Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to one or more of the following persons, as determined by EPA (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the other Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Such Settling Defendants shall, within 45 days of entry of this Consent Decree, submit to EPA for review and approval with respect to such property:

(1)    A draft easement, in substantially the form to be provided by EPA and that is enforceable under the laws of the State of South Carolina, and

(2)    a current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

14

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, such Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Recorder's Office of Spartanburg County. Within 30 days of recording the easement, such Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 311.1.

27.    If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a.    an agreement to provide access thereto for Settling Defendants, as well as for the United States on behalf of EPA, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a of this Consent Decree;

b.    an agreement, enforceable by the Settling Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such protective measures include but are not limited to deed restrictions prohibiting residential use of the property; and

c.    if EPA so requests, the execution and recordation in the Recorder's Office of Spartanburg County, State of South Carolina, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 26.b of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to one or more of the following persons as determined by EPA (i) the United States, on behalf of EPA, and its representatives, (ii) the Settling Defendants and their representatives, and/or (iii) other appropriate grantees.

Within 45 days of a request by EPA, Settling Defendants shall submit to EPA for review and approval with respect to such property:

(1)    A draft easement, in substantially the form to be provided by EPA and that is enforceable under the laws of the State of South Carolina, and

(2)    a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances)

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Recorder's Office of Spartanburg County. Within 30 days of the recording of the easement, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

28.     For purposes of Paragraphs 26 and 27 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance. If (a) any access or land/water use restriction agreements required by Paragraphs 27.a or 27.b of this Consent Decree are not obtained within 45 days of the date of entry of this Consent Decree, (b) any access easements or restrictive easements required by Paragraph 27.c of this Consent Decree are not submitted to EPA in draft form within 45 days of EPA's request for an easement, or (c) Settling Defendants are unable to obtain an agreement pursuant to Paragraph 26.c.(1) or Paragraph 27.c.(1) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this consent decree within 45 days of the date of entry of this consent decree, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 26 or 27 of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Reimbursement of Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

29.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's efforts to secure such governmental controls.

30.     Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks. Settling Defendants shall submit these progress reports to EPA by the tenth day of every month following the lodging of this Consent Decree until EPA notifies the Settling Defendants pursuant to Paragraph 51.b of Section XIV (Certification of Completion). If requested by EPA, Settling Defendants shall also provide briefings for EPA to discuss the progress of the Work.

32. The Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

33. Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 4, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

34. Within 20 days of the onset of such an event, Settling Defendants shall furnish to Plaintiff a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

35. Settling Defendants shall submit 4 copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling

17

Defendants shall simultaneously submit 3 copies of all such plans, reports and data to the State. Upon request by EPA Settling Defendants shall submit in electronic form all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

36.     All reports and other documents submitted by Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

37.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (e) any combination of the above. In the event EPA disapproves a submission or requires modification, EPA shall, within 14 days after notice to Settling Defendants, meet with Settling Defendants to determine if an agreement can be reached regarding the modification of the submission. Following consultation, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 21 days after the meeting with the Settling Defendants, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

38.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 37(a), (b), or (c), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 37(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

39.     Resubmission of Plans.

a.     Upon receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendants shall, within 14 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 14-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 40 and 41.

b.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient

18

portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

40.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

41.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

42.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT COORDINATORS

43.     Within 20 days of lodging this Consent Decree, Settling Defendants, and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

44.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site

constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

45.     EPA's Project Coordinator and the Settling Defendants' Project Coordinator will meet, at a minimum, on a monthly basis.

### XIII. ASSURANCE OF ABILITY TO COMPLETE WORK

46.     Within 30 days of entry of this Consent Decree, Settling Defendants shall establish and maintain financial security in the amount of $4,673,000.00 in one or more of the following forms:

      a.    A surety bond guaranteeing performance of the Work;

      b.    One or more irrevocable letters of credit equaling the total estimated cost of the Work;

      c.    A trust fund;

      d.    A guarantee to perform the Work by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with at least one of the Settling Defendants;

      e.    A demonstration that one or more of the Settling Defendants satisfy the requirements of 40 C.F.R. Part 264.143(f).

47.     If the Settling Defendants seek to demonstrate the ability to complete the Work through a guarantee by a third party pursuant to Paragraph 46.d of this Consent Decree, Settling Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part 264.143(f). If Settling Defendants seek to demonstrate their ability to complete the Work by means of the financial test or the corporate guarantee pursuant to Paragraph 46.d or 46.e, they shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the Effective Date. In the event that EPA, determines at any time that the financial assurances provided pursuant to this Section are inadequate, Settling Defendants shall, within 30 days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of the other forms of financial assurance listed in Paragraph 46 of this Consent Decree. Settling Defendants' inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

48.     If Settling Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 46 above after entry of this Consent Decree, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed. Settling Defendants shall submit a proposal for such reduction to EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by EPA. In the event of a dispute, Settling Defendants may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

49.    Settling Defendants may change the form of financial assurance provided under this Section at any time, upon notice to and approval by EPA, provided that the new form of assurance meets the requirements of this Section.  In the event of a dispute, Settling Defendants may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

Settling Defendants shall send all documents guaranteeing financial assurance directly to the Superfund Records Program Manager at:

> Superfund Records Program Manager
> The United States Environmental Protection Agency
> Region 4
> Atlanta Federal Center
> 61 Forsyth Street
> Atlanta, Georgia 30303-8960

Such documents must contain notification or a cover letter identifying the particular site which is the subject of the financial guarantee.  A copy of the document and transmittal letter shall also be sent to Yvonne Jones, Regional Project Manager, at the above address

## XIV.  CERTIFICATION OF COMPLETION

50.    Completion of the Remedial Action.

a.    Within 45 days after Settling Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been attained, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, and EPA.  If, after the pre-certification inspection, the Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been attained, they shall submit a written report requesting certification to EPA for approval, pursuant to Section XI (EPA Approval of Plans and Other Submissions) within 30 days of the inspection.  In the report, a registered professional engineer and the Settling Defendants' Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree.  The written report shall include as-built drawings signed and stamped by a professional engineer.  The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to

this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 14.b.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff).  Certification of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

51.     Completion of the Work.

a.     Within 45 days after Settling Defendants conclude that all phases of the Work (including O & M), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, and EPA.  If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree.  The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 14.b.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules

established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

      b.     If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

## XV. EMERGENCY RESPONSE

52.     In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 53, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, the Settling Defendants shall notify the EPA Emergency Response Unit, Region 4. Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Defendants shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

53.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants by Plaintiffs).

## XVI. PAYMENTS FOR RESPONSE COSTS

54.1    Payments for Past Response Costs by Settling Defendants.

     a. Within 30 days of the Effective Date, Settling Defendants shall pay to EPA $ 731,621.19 in payment for Past Response Costs. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number 90-11-3-902, EPA Site/Spill ID Number SCD058754789/04TP, and DOJ Case Number 90-11-3-902. Payment shall be made in accordance with instructions provided to the Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the District of Spartanburg following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

     b. At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA, in accordance with Section XXVI (Notices and Submissions).

54.2.    Payments for EPA's Future Response Costs By Settling Defendants and Remaining Settling Federal Agencies.

a. Settling Defendants and Remaining Settling Federal Agencies, shall pay EPA's Future Response Costs. On a periodic basis the United States will send Settling Defendants only a bill requiring payment for total Future Response Costs that includes a SCORPIOS Report. Settling Defendants shall make all payments on behalf of Settling Defendants and Remaining Settling Federal Agencies within 30 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 54.2.c. Settling Defendants shall make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number SCD058754789/04TP, and DOJ Case Number 90-11-3-902. Settling Defendants shall send the check(s) to:

> U.S. EPA Region 4
> Superfund Accounting
> Attn: Collection Officer in Superfund
> P.O. Box 100142
> Atlanta, GA 30384

b. At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XXVI (Notices and Submissions).

c.    Settling Defendants may contest payment of any Future Response Costs under Paragraph 54.2 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, the Settling Defendants shall within the 30 day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 54.2. Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of South Carolina and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendants shall

24

pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 54.2. If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 54.2; Settling Defendants shall disburse any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

d.     In the event that the payments required by Subparagraph 54.1.a are not made within 30 days of the Effective Date or the payments required by Paragraph 54.2 are not made within 30 days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the Effective Date. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 72. The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 54.2.

55. Payment of Response Costs By Settling Federal Agencies

55.1  Cashout by United States Postal Service

a. As soon as reasonably practicable after the effective date of this Consent Decree and consistent with Paragraph 56 below, the United States Postal Service shall pay $174.53 to the EPA Hazardous Substance Superfund in reimbursement of its share of Past Response Costs. The United States Postal Service shall make its payment required by this Paragraph via electronic funds transfer ("EFT") in accordance with the procedures set forth in Paragraph 54.1.a. above.

b. As soon as reasonably practicable after the effective date of this Consent Decree and consistent with Paragraph 56 below, the United States Postal Service shall pay $1,202.51, which payment includes a premium, to the Settling Defendants for Future Response Costs to be spent by the Settling Defendants to settle all claims regarding the Site and receive releases as in Paragraph 94 and full contribution protection as described in Paragraph 96.

55.2   Payment of Past Response Costs By the Remaining Settling Federal Agencies to EPA

a. As soon as reasonably practicable after the Effective Date of this Consent Decree and consistent with paragraph 55.2.b. below, the United States, on behalf of the Remaining Settling Federal Agencies, shall pay the EPA Hazardous Substance Superfund $603,478.04 in reimbursement of Past Response Costs. The procedure for the payment of such costs is set forth in Paragraph 54.1.a.

b. If the payment to the EPA Hazardous Substance Superfund required by subparagraphs 55.2.a above is not made as soon as reasonably practicable, the appropriate EPA Regional Branch Chief may raise any issues relating to payment to the appropriate DOJ Assistant Section Chief for the Environmental Defense Section. In any event, if the payment required by Paragraph 55.2.a

above is not made within one hundred twenty (120) days after the effective date of the Consent Decree, EPA and DOJ have agreed to resolve the issue within thirty (30) days in accordance with a letter agreement dated December 28, 1998.

56.     The Parties to this Consent Decree recognize and acknowledge that the payment obligations of the Settling Federal Agencies under this Consent Decree can only be paid from appropriated funds legally available for such purpose.  Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §1341, or any other applicable provision of law.

57.     Payment of Settling Defendants' Future Response Costs By The Remaining Settling Federal Agencies

        a. The United States, on behalf of the Remaining Settling Federal Agencies and consistent with Paragraph 56 above, shall:

                1) pay $697,475.56 to the Settling Defendants as an initial payment of the Remaining Settling Federal Agencies allocated share of Settling Defendants' Future Response Costs, as soon as reasonably practicable after the Effective Date of this Consent Decree; and

                2) pay $529,032.36 to the Settling Defendants as a second initial payment of Remaining Settling Federal Agencies' allocated share of Settling Defendants' Future Response costs, within 365 days of the Effective Date of this Consent Decree.  This payment may be delayed as agreed upon by the Settling Defendants and the Remaining Settling Federal Agencies to account for a delay in Remedial Design.  The Settling Defendants shall prepare and submit a written demand for payment which includes: 1) the amount of the payment requested; 2) a written accounting of the costs incurred for Work performed at the Site associated with the Remedial Design phase; 3) a certification that the Work has been performed and paid for; and 4) a reasonable explanation as to whether the costs were incurred in a manner that is necessary and consistent with the National Contingency Plan.  The United States, on behalf of the Remaining Settling Federal Agencies and consistent with Paragraph 56 above, shall pay the amount requested minus any portion attributable to costs that the Remaining Settling Federal Agencies challenge are inconsistent with the ROD or the NCP, in accordance with subparagraph 57.f. below.

        b. The United States, on behalf of the Remaining Settling Federal Agencies and consistent with Paragraph 56 above, further agrees that it will continue to pay its allocated share of the Settling Defendants' Future Response Costs, including the Remaining Settling Federal Agencies allocated share of EPA's Future Response Costs.  The United States, on behalf of the Remaining Settling Federal Agencies, shall not be responsible for any portion of Settling Defendants' Stipulated Penalties, as described in Section XX.  After the Settling Defendants' Future Response Costs exceed $3,176,800, the Settling Defendants may submit claims for reimbursement to the Section Chief of the Environmental Defense Section, whose address is listed in Section XXVI., no more frequently than every six months. The Settling Defendants shall include with such claims EPA's request for Future Response Costs, a copy of the check or checks paid to EPA for Future Response Costs, a statement of Future Response Costs incurred by Settling Defendants during the period covered by the statement, and sufficient documentation to allow verification of the accuracy of the costs claimed, and a statement that such costs were properly incurred and consistent with the NCP, the ROD and this Consent Decree.

c. The United States' future allocated share of costs shall be based on its volumetric share as a proportion to the total volumetric share of the Settling Defendants and the Remaining Settling Federal Agencies. In the event that any Settling Defendant files for bankruptcy protection and cannot pay its share, the Settling Defendants shall notify the Remaining Settling Federal Agencies and shall allocate said bankrupt Settling Defendant's share of such contribution proportionately among all the other Settling Defendants and the Remaining Settling Federal Agencies.

d. If the Remaining Settling Federal Agencies in good faith question or contest any invoiced response costs from the Settling Defendants, they shall have the right to request additional documentation from the Settling Defendants. The Remaining Settling Federal Agencies shall further have the right to withhold payment of such disputed amount; provided, however, that the Remaining Settling Federal Agencies shall give the Settling Defendants written notice concisely describing the matter(s) in dispute within 120 days of the date of receipt of such demand for payment of additional response costs and shall promptly make a good faith effort to resolve the dispute. Representatives of each party involved in the dispute shall promptly confer and expeditiously attempt, in good faith, to resolve the dispute. The negotiations may involve such consultation, communications, and meetings as may be effective in satisfactorily resolving the dispute. Any party may apply to the Court for relief if the dispute is not resolved by the parties within 60 days after receipt of the notice. The Dispute Resolution Provisions of this Consent Decree do not apply to disputes raised pursuant to this paragraph and payment disputes between the Remaining Settling Federal Agencies and Settling Defendants. Any such dispute shall not excuse performance by the Settling Defendants and Remaining Settling Federal Agencies of their obligations under this Consent Decree.

e. In the event that payment of undisputed costs contained in the written demand is not made within 120 days of the date of receipt of the demand for payment of such costs, interest on the unpaid amount shall be paid at the rate established pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), commencing on the 121st day after the date of receipt of the demand for payment of such costs and accruing through the date of payment. The Remaining Settling Federal Agencies do not have an obligation to pay costs in response to any written demand made pursuant to Paragraph 57.b if submitted later than 5 years after the date on which the relevant costs were paid by the Settling Defendants.

f. Upon receipt of payment by the Remaining Settling Federal Agencies on any or all items included within a claim, the Settling Defendants shall execute a release which states that the amount claimed in the claim for reimbursement represents the Remaining Settling Federal Agencies' percentage allocated share of response costs incurred during the period covered by the claim and accepting the Remaining Settling Federal Agencies' payment thereof as payment in full of the Remaining Settling Federal Agencies' allocated share of such response costs.

g. Payment shall be made by Electronic Funds Transfer to the account of The Aqua-Tech Trust Fund in accordance with current electronic transfer procedure.

## XVII. INDEMNIFICATION AND INSURANCE

58.    Settling Defendants' Indemnification of the United States.

a. The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized representatives under

Section 104(e) of CERCLA. Settling Defendants shall indemnify, save and hold harmless the United States (with the exception of the Settling Federal Agencies) and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Defendants agree to pay the United States (with the exception of the Settling Federal Agencies) all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States.

b. The United States shall give Settling Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 58, and shall consult with Settling Defendants prior to settling such claim.

59. Settling Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

60. No later than 15 days before commencing any on-site Work, Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Subparagraph 50.b of Section XIV (Certification of Completion) comprehensive general liability insurance with limits of eight million dollars ($8,000,000.00), combined single limit, and automobile liability insurance with limits of eight million dollars ($8,000,000.00), combined single limit, naming the United States as an additional insured. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but

in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. FORCE MAJEURE

61.   "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

62.   If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Hazardous Waste Management Division, EPA Region 4, within 7 days of when Settling Defendants first knew that the event might cause a delay. Within 15 days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

63.   If EPA, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision. If EPA, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

64.    If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 62 and 63, above. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX. DISPUTE RESOLUTION

65.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

66.    Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

67.    Statements of Position.

a.    In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 15 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants. The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 68 or Paragraph 69.

b.    Within 15 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 68 or 69. Within 15 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.    If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 68 or 69, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the

Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 68 and 69.

68.    Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions.

a.    An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.    The Director of the Waste Management Division, EPA Region 4, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 68.a. This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 68.c. and d.

c.    Any administrative decision made by EPA pursuant to Paragraph 68.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion.

d.    In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Waste Management Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 68.a.

69.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.    Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 67, the Director of the Waste Management Division, EPA Region 4, will issue a final decision resolving the dispute. The Waste Management Division Director's decision shall be binding on the Settling Defendants unless, within 10 days of receipt of the decision, the Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly

implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion.

       b.     Judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

    70.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 65. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

XX. STIPULATED PENALTIES

    71.    Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 72 and 73 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

    72.    <u>Stipulated Penalty Amounts - Work</u>.

       a.    The following stipulated penalties shall be payable per violation per day to the United States for any violation of or non-compliance with the items identified in subparagraph 72.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $2,500 | 1st through 14th day |
| $3,500 | 15th through 30th day |
| $5,000 | 31st day and beyond |

       b.    <u>Compliance Milestones</u>.

          The Compliance milestones include both the timely and adequate submittal (as defined in Section XI, Approval of Plans and Other Submissions) of, and substantial compliance with the following documents and substantive requirements:

    (1)    RD Work Plan and Associated Plans as specified in the SOW;

    (2)    RD and Associated Reports as specified in the SOW;

    (3)    Treatability Study Work Plan and Associated Plans, if applicable;

(4) RA Work Plan and Associated Plans as specified in the SOW;

(5) Prefinal Construction Inspection Report;

(6) Final Construction Report;

(7) Remedial Action Report;

(8) O &M Plan and Associated Plans as specified in the SOW;

(9) O & M Manual; and

(10) Performance Standards Verification Plan.

73. Stipulated Penalty Amounts - Reports.

a. The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to Section X (Reporting Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,500 | 1st through 14th day |
| $2,500 | 15th through 30th day |
| $3,500 | 31st day and beyond |

74. In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 88 of Section XXI (Covenants Not to Sue by Plaintiff), Settling Defendants shall be liable for a stipulated penalty in the amount of the remaining portion of the cleanup.

75. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency; (2) with respect to a decision by the Director of the Waste Management Division, EPA Region 4, under Paragraph 68.b. or 69.a. of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

76. Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA may send the Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in

the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation.

77.    All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to USAO, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID Nos. SCD058754789/04TP, the DOJ Case Number 90-11-3-902, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVI (Notices and Submissions).

78.    The payment of penalties shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

79.    Penalties shall continue to accrue as provided in Paragraph 72 during any dispute resolution period, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c.    If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendants to the extent that they prevail.

80.    If Settling Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 76.

81.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

82. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI. COVENANTS BY PLAINTIFF

83. In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 84 (United States Pre-Certification Reservations), 85 (United States Post-Certification Reservations), and 87 (General Reservation of Rights) of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA with respect to the Work, past response actions, and Past and Interim costs relating to the Site. Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 54.1.a. of Section XVI (Payments for Response Costs). With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 50.b of Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

83.1 In consideration of the payments that will be made by the Settling Federal Agencies under the terms of the Consent Decree, and except as specifically provided in Paragraph 84 and 85 of this Section, EPA covenants not to take administrative action against the Settling Federal Agencies pursuant to Sections 106 and 107(a) of CERCLA relating to the Site and for recovery of Past Response Costs and Future Response Costs. EPA's covenant shall take effect upon the receipt of the payments required by Paragraph 55 of Section XVI (Reimbursement of Response Costs). EPA's covenant is conditioned upon the satisfactory performance by Settling Federal Agencies of their obligations under this Consent Decree. EPA's covenant extends only to the Settling Federal Agencies and does not extend to any other person.

84. United States' Pre-certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants, and EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agencies,

    a.    to perform further response actions relating to the Site, or

    b.    to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

        (1)    conditions at the Site, previously unknown to EPA, are discovered, or

        (2)    information, previously unknown to EPA, is received, in whole or in part, and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

85.    <u>United States' Post-certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants, and EPA reserves the right to issue an administrative order seeking to compel the Settling Federal Agencies,

a.    to perform further response actions relating to the Site, or

b.    to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

(1)    conditions at the Site, previously unknown to EPA, are discovered, or

(2)    information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

86.    For purposes of Paragraph 84, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision.  For purposes of Paragraph 85, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

87.    <u>General reservations of rights</u>.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenants not to sue.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants, and EPA and the federal natural resources trustees reserve, and this Consent Decree is without prejudice to, all rights against the Settling Federal Agencies, with respect to:

a.    claims based on a failure by Settling Defendants  or the Settling Federal Agencies, to meet a requirement of this Consent Decree;

b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.    liability based upon the Settling Defendants' ownership or operation of the Site, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants;

36

      d.    liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

      e.    criminal liability;

      f.    liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

      g.    liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 14 (Modification of the SOW or Related Work Plans).

88.    <u>Work Takeover</u> In the event EPA determines that Settling Defendants have ceased implementation of any portion of the Work, are seriously or repeatedly deficient or late in their performance of the Work, or are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary. Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 65, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVI (Payment for Response Costs).

89.    Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES

90.    <u>Covenant</u> by Settling Defendants. Subject to the reservations in Paragraph 91, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions, and all Past and Interim costs, including but not limited to:

      a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

      b.    any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site;

      c.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State of South Carolina Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

      d.    any direct or indirect claim for disbursement from the Aqua-Tech Special Account.

Except as provided in Paragraph 93 (Waiver of Claims Against De Micromis Parties), Paragraph 94 (Waiver of Claims Against *De Minimis* Parties), and Paragraph 99 (waiver of Claim-Splitting Defenses), these covenants shall not apply in the event that the United States

brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 84, 85, and 87, but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

90.1. Covenant by Settling Federal Agencies. Settling Federal Agencies hereby agree not to assert any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law with respect to the Site or this Consent Decree. This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300).

91.    The Settling Defendants reserve, and this Consent Decree is without prejudice to: (a) claims against the United States that are outside the scope of matters addressed as defined in Paragraph 96; (b) claims against the Remaining Federal Agencies, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA; and (c) contribution claims against the Settling Federal Agencies in the event any claim is asserted by the United States against the Settling Defendants under the authority of or under Paragraphs 83 or 83.1of Section XXI (Covenants by Plaintiff), but only to the same extent and for the same matters, transactions, or occurrences as are raised in the claim of the United States against Settling Defendants.

92.    Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

93.    Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, including for contribution, against any person where the person's liability to Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if:

        a.    Any materials contributed by such person to the Site constituting Municipal Solid Waste (MSW) or Municipal Sewage Sludge (MSS) did not exceed 0.002% of the total volume of waste at the Site, and

b.      Any material contributed by such person to the Site containing hazardous substances, but not constituting MSW or MSS, did not exceed the greater of (i) 0.002% of the total volume of waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

c.      This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

94.      Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to Future Response Costs, including for contribution for Future Response Costs, against any person that has entered into a final CERCLA § 122(g) *de minimis* settlement with EPA with respect to Future Response Costs as of the Effective Date. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

95.      Except as provided in Paragraph 93 (Waiver of Claims Against De Micromis Parties) and Paragraph 94 (Waiver of Claims Against *De Minimis* Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Except as provided in Paragraph 93 (Waiver of Claims Against De Micromis Parties) and Paragraph 94 (Waiver of Claims Against *De Minimis* Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

96.      The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants and the Settling Federal Agencies are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. The "matters addressed" in this Consent Decree are the Work, past response actions, Past, Interim and Future Response Costs. The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States asserts rights against Settling Defendants coming within the scope of such reservations.

97.      The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

98.      The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in

writing the United States within 10 days of service of the complaint on them. In addition, Settling Defendants shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

99.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not To Sue by Plaintiff).

## XXIV. ACCESS TO INFORMATION

100.     Settling Defendants shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

101.     Business Confidential and Privileged Documents.

a.     Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendants.

b.     The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

102.     No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or

engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. Retention of Records

103.     Until 7 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 51.b of Section XIV (Certification of Completion of the Work), Settling Defendants, through the PRP Group, shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate to the work done pursuant to this Consent Decree. In the event that Settling Defendants wish to destroy documents covered by this section before 10 years, Settling Defendants shall give EPA notice and an opportunity to review and take possession of any documents that are proposed to be destroyed. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work.

103.1. The United States acknowledges that each Settling Federal Agency (1) is subject to all applicable Federal record retention laws, regulations, and policies; and (2) has certified that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

104.     At the conclusion of this document retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendants shall deliver any such records or documents to EPA. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege, they shall provide the Plaintiff with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

105.     Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI. Notices and Submissions

106.     Unless otherwise provided herein, whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent

by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the Settling Federal Agencies, and the Settling Defendants, respectively.

<u>As to DOJ:</u>

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-11-3-902


        and

Chief, Environmental Defense Section
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 23986
Washington, D.C. 20026-3986
Re: DJ # 90-11-3-902

<u>As to EPA</u>:
Franklin E. Hill, Acting Division Director
Waste Management Division
Superfund and Emergency Response
United States Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

Yvonne O. Jones
EPA Project Coordinator
United States Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

And

Superfund Enforcement and Information Management Branch

EPA Region 4
61 Forsyth Street, SW
Atlanta, Georgia 30303

As to the Settling Defendants:
Charles H. Tisdale, Jr.
Amelia S. Magee
King & Spalding LLP
191 Peachtree Street
Atlanta, Georgia 30303-1763

## XXVII. EFFECTIVE DATE

107.    The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII. RETENTION OF JURISDICTION

108.    This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. APPENDICES

109.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the web address location of the ROD.

"Appendix B" is the SOW.

"Appendix C" is the map of the Site.

"Appendix D" is the complete list of the Settling Defendants.

"Appendix E" is intentionally omitted.

"Appendix F" is the complete list of the Settling Federal Agencies.

"Appendix G" is the letter agreement from Louis J. Schiffer to Steven A. Herman.

## XXX. COMMUNITY RELATIONS

110.    Settling Defendants shall propose to EPA their participation in the community relations plan to be developed by EPA. EPA will determine the appropriate role for the Settling Defendants under the Plan. Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public. As requested by EPA, Settling Defendants shall

participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXXI. MODIFICATION

111.     Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendants. All such modifications shall be made in writing.

112.     Except as provided in Paragraph 14 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Defendants, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(B)(ii). Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification. Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendants.

113.     Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

114.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

115.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. SIGNATORIES/SERVICE

116.     Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

117.     Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

118.     Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.

Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXIV. FINAL JUDGMENT

119.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree.  The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

120.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 22 DAY OF May , 2005.

United States District Judge